Harold V. Henson

*v.*

The Prudential Insurance Co. of America, *etc., et al.*

(No. 13508)

Decided March 18, 1975.

*H. H. Roberts* for appellant.

*Jackson, Kelly, Holt & O'Farrell, W. T. O'Farrell and Lee O. Hill* for appellees.

NEELY, JUSTICE:

This appeal was granted to determine the proper interpretation of a pension contract administered by the defendant, The Prudential Insurance Company of America, known as Group Annuity Plan No. GA-267. The plaintiff, Harold V. Henson, originally brought an action in the Court of Common Pleas of Kanawha County, West Virginia, to recover annuity payments which he alleged were due to him by virtue of a contract entered into in 1949 between his former employer, Lewis-Hubbard Corporation, and Prudential, the object of which was to provide retirement income for Lewis-Hubbard's employees. The Court of Common Pleas entered judgment in favor of Prudential. Henson sought an Appeal and Writ of Error in the Circuit Court of Kanawha County which was denied. Henson then appealed to this Court and we granted a Writ of Error in order to determine the rights of the respective parties to this insurance contract. As the Court finds that this case is exclusively concerned with the interpretation of a contract of insurance, and as the Court further finds that the Court of Common Pleas was correct in determining that the plaintiff did not have vested rights to past service benefits under the contract, the judgment of the Circuit Court of Kanawha

County denying an Appeal and Writ of Error from the judgment of the Court of Common Pleas is affirmed.[1]

In March 1949 plaintiff was an employee of 26 years standing with Lewis-Hubbard and remained with Lewis-Hubbard until he resigned in August 1955 at the age of 57. The original contract between Prudential and Lewis-Hubbard was entered into in 1949, and, as amended in 1955, governs the resolution of this case. Under the provisions of the 1949 and 1955 contracts, Lewis-Hubbard made contributions to purchase both future service and past service benefits for its employees. The money contributed for future (or participating) service was segregated and credited to accounts for individually named employees. Funds for the purchase of past service benefits (or for benefits based upon service before the March 1949 contract) were contributed at a rate between six and ten percent of the total accumulated cost of such benefits per year. At the end of each year, the amounts accumulated were used to purchase past service benefit annuities, to the extent of the funds available for such purchase, for the oldest employees nearest retirement. The procedure of using the past service contribution made by Lewis-Hubbard to buy annuities for the oldest employees in each year for whom such benefits had not

---

[1] On this appeal the plaintiff also raised a question with regard to the admissibility of testimony of one Elmer M. Ertl who was Senior Service Consultant in the Group Annuity Department of Prudential. Mr. Ertl testified from abstracts of company records with regard to the nature of the plan and the amounts which were paid out under the plan. Plaintiff's objections were that Mr. Ertl's testimony was hearsay, as he was not the custodian of the records from which he testified, and that the records were not the best evidence of the transactions about which Mr. Ertl testified. It conclusively appears from the record that the Court of Common Pleas considered Mr. Ertl's testimony irrelevant, as the court discharged the jury after completion of all the testimony, and took the case under advisement exclusively to interpret the provisions of the contract. Accordingly, as Mr. Ertl's testimony had no bearing on the determination of the case, and as the jury was discharged before rendering a verdict on the issues about which he testified, any error with regard to the admission of Mr. Ertl's testimony was harmless.

previously been purchased was continued for each year for which contributions for this purpose were made.

On March 1, 1960, Lewis-Hubbard requested a suspension of contributions for past service benefits and under the terms of the contract Prudential agreed to such a suspension. Prudential further agreed to accept less than the minimum contribution for the past service benefits for the year 1959, but as part of this agreement, Prudential insisted that Lewis-Hubbard comply with the plan requirement that if any employees retired during the suspension period, past service annuities would be purchased for them if they were entitled to the same, but that no other past service annuities would be purchased. Approximately $116,000 had been contributed by Lewis-Hubbard as past service contribution and this amount was used to purchase past service benefits for the employees of Lewis-Hubbard in accordance with the contract provision to buy an annuity for the oldest employee first and then for the next oldest employee and so forth until the fund expired. The last benefit purchased from the past service contribution was in March 1959, at which time the fund was exhausted, and as plaintiff was too young to have had an annuity purchased for him from this fund, no annuity was purchased for him.

The suspension period ran for two years from March 1, 1960 to February 28, 1962, and upon expiration of the suspension period Lewis-Hubbard notified Prudential that it would not make any further past service contributions under the plan. The plaintiff became 65 on September 7, 1962; however, at that time there remained no funds on deposit with Prudential to be used for the purpose of past service benefits for the plaintiff, and by the terms of the suspension agreement, no such benefits could be purchased for any employee of Lewis-Hubbard after the suspension period. In April 1963, Lewis-Hubbard notified Prudential that it would cease to be an employer under the plan, and long before the institution of this action Lewis-Hubbard stopped doing business.

In July 1961, approximately $23,935.78 unused employer credit had been accumulated in Lewis-Hubbard's account. This credit was the result of cancellation of certain future service benefits because the employees concerned left Lewis-Hubbard before their rights under the plan became vested. The plaintiff argues that under the terms of the contract this $23,935.78 of unused employer credit should have been used to purchase a past service benefit annuity for the plaintiff; however, the plaintiff did not prove that even if the $23,935.78 were available for application to the purchase of past service benefit annuities, that he would be the employee next in line by virtue of age to receive a paid-up annuity under the contract.

The Court finds that the accumulated $23,935.78 (except for a small portion which was used to purchase past service benefits for an employee named Sneed) was properly used under the terms of the policy to purchase future service benefits for employees who became eligible for such benefits during the time the past service contribution provisions were under suspension. Accordingly there were no funds available to purchase past service benefits for Mr. Henson in September 1962 when he became 65, and Prudential was not obligated to pay his past service benefits.

Provision IV, Paragraph 3(b) of the contract[2] provides that the employer may make past service contributions

---

[2] Provision IV, Paragraph 3(b):

"AMOUNT OF EMPLOYER'S PAST SERVICE CONTRIBUTIONS: The Employer may, on the Effective Date of this Contract and on each of the first five Contract Anniversaries, make an annual Past Service Contribution and from time to time, thereafter, make Past Service Contributions to be applied as Consideration for the purchase of Past Service Annuity. Except as provided below or unless otherwise agreed upon in writing between the Employer and the Prudential, the aggregate Past Service Contributions made by the Employer during each Contract Year shall not be less than 6% nor more than 10% of the total Consideration which would be required as of the Effective Date of this Contract to complete the purchase of all Past Service Annuity for which Participants are

for the purchase of past service annuities. This paragraph also provides that the employer may at any time discontinue payment of past service contributions, without prejudice to the continuance of the contract in all other respects.

Paragraph 3(c) of the same Provision IV[3] provides that

---

then qualified, on the assumptions that payment of such total Consideration as of the Effective Date of this Contract were permitted by the terms of this Contract and that the Schedules contained in this Contract on its Effective Date were applicable to such total Consideration.

"The Employer may at any time discontinue payment of Past Service Contributions, without prejudice to the continuance of this Contract in all other respects in accordance with its terms. In the event of such discontinuance, payment of Past Service Contributions may be resumed only with the written consent of and upon terms satisfactory to the Prudential, and, in the absence of any such resumption, the amounts of Past Service Annuity purchased on or before the end of the Contract Year in which such discontinuance occurs shall be deemed to be the only Past Service Annuity to be purchased under this Contract.

[3] Provision IV, Paragraph 3(c):

"APPLICATION OF EMPLOYER'S PAST SERVICE CONTRIBUTIONS: Subject to any previous purchase and to section 1(c) of Provision V, the annual amount of Normal Retirement Annuity that a Participant eligible for coverage for Past Service Annuity is qualified to have purchased for him as Past Service Annuity on the date any application of Employer's Past Service Contributions is to be made shall be that stated in section 3(a) of this Provision if such Participant has remained in the employ of the Employer from the Effective Date of this Contract to and including such date of purchase, otherwise shall be that percentage of the amount so stated for which the Participant has fulfilled the vesting requirements set forth in Provision V.

"Each Past Service Contribution received by the Prudential shall be accumulated at the Contract Rate of Interest from the date such Contribution is received to the date of its application. The accumulation of Past Service Contribution received during each Contract year shall, subject to the terms of the next paragraph, be applied at the end of such Contract Year toward the completion of the purchase of the amount of Past Service Annuity for which Participants are then qualified in the order of nearness to their respective Normal Annuity Dates. If two or more such Participants have the same Normal Annuity Date, purchase shall be made in order of greatest length of employment with the Employer.

the accumulation of past service contributions received during each contract year shall, subject to the terms of the next paragraph, be applied at the end of such contract year toward the completion of the purchase of the amount of past service annuity for which participants are then qualified in the order of nearness to their respective normal annuity dates. Paragraph 3(c) further provides that if a participant attains his effective annuity date and the past service annuity for which he is then qualified has not been completely purchased, the accumulation, if any, of past service contributions, shall then be applied toward the completion of the purchase of that participant's annuity, and any additional past service contribution which may be required as consideration to complete such purchase shall, unless payment of employer's past service contributions has been discontinued in accordance with Paragraph 3(b), be immediately due and payable by the employer.

The provisions state clearly that the employer had the option in the first instance to initiate past service benefit contributions, and that, if such contributions were to be made, each annual contribution would be payable at the end of each year to the participants then eligible for past service benefits. The contract further provides that the employer could discontinue the past service benefit

---

"If a Participant attains his Effective Annuity Date and the Past Service Annuity for which he is then qualified has not been completely purchased, the accumulation, if any, of Past Service Contributions, or the necessary portion thereof, shall then be applied toward the completion of such purchase, and any additional Past Service Contribution which may be required as Consideration to complete such purchase shall, unless payment of Employer's Past Service Contributions has been discontinued in accordance with section 3(b) of this Provision, be immediately due and payable by the Employer. If the employment of a Participant is terminated after fulfilling the vesting requirements for an amount of Past Service Annuity as set forth in Provision V and if such amount of Past Service Annuity has not been completely purchased, the Employer may direct that the accumulation, if any, of Past Service Contributions, or the necessary portion thereof, be applied as of the date of such termination to complete such purchase.

"The Consideration for the purchase of Past Service Annuity shall be determined from Schedule BB."

provision of the contract at any time. Lewis-Hubbard did make annual payments for past service benefits for 11 years, i.e. from 1949 to and including 1959, totaling approximately $116,000. During this same period, according to exhibits on behalf of Prudential, the company annually purchased past service annuities for employees becoming eligible for annuities up to the gross total amount of approximately $116,000. Payments of past service contributions were then suspended by the employer for a 2 year period and discontinued entirely on March 1, 1962. In September 1962, none of these direct past service contributions remained from which to provide an annuity for plaintiff.

The employer had, however, become entitled to a credit of approximately $23,900 from the payments made by it into the future service benefit protection portion of the plan. Plaintiff asserts that under the terms of Provision XX, Paragraph 2(a)(ii) of the contract[4] this sum of

---

[4] Provision XX, Paragraph 2:

"(a) AT THE COMMENCEMENT OF THE PAID-UP TERM:
$$* \quad * \quad * \quad *$$
"(ii) The total of any amounts becoming available for application and designated to be applied as provided in this section 2(a)(ii) shall be applied as of the date of commencement of the Paid-Up Term toward the purchase of Past Service Annuity in accordance with section 3 of Provision IV in the manner set forth therein for the application of Past Service Contributions at the end of a Contract year.

"If all Past Service Annuity for which Participants are qualified at the commencement of the Paid-Up Term has been purchased prior thereto, or if the total amount to be applied is more than sufficient to complete the purchase of all Past Service Annuity for which Participants are then qualified, then any amount which is not so required shall be applied to the purchase of Normal Retirement Annuity in the annual amount of $12.00, at rates to be determined by the Prudential at the date of such purchase, for as many Participants who have not attained their Effective Annuity Dates prior to the date of commencement of the Paid-Up Term and who were in the employ of the Employer immediately prior to the date of commencement of the Paid-Up Term as such unapplied amount will permit. Such purchase shall be made in order of such Participant's nearness to their respective Normal Annuity Dates. If two or more such Participants have the same Normal Annuity

money had to be applied to the purchase of past service benefits, thus making funds available for the purchase of this annuity when he became eligible in September 1962. The Court finds that Provision XX, Paragraph 2(a)(ii) read in conjunction with Provision V, Paragraph 2(a) and (b)[5] fully supports Prudential's contention that the employer, having discontinued payments of past ser-

---

Date, such purchase shall be made in order of greatest length of employment with the Employer. If any amount remains unapplied after making the foregoing purchase, the process shall be repeated until all of such unapplied amount has been so used.

[5] Provision V, Paragraph 2:

*"Reapplication of Employer's Contributions:*

"If Normal Retirement Annuity purchased for a Participant by Employer's Contributions is canceled for any reason other than the death of the Participant, and if evidence satisfactory to the Prudential that the Participant was in good health on the date of cancelation [sic] is submitted to the Prudential within six months thereafter, then, as of the Contract Anniversary following cancelation, [sic] the following amounts of such Employer's Contributions previously applied shall be available for reapplication as Employer's Contributions *then or next thereafter becoming due under this Contract*: (Emphasis supplied by Court)

"(a) If Future Service Annuity purchased for a Participant by Employer's Contributions is canceled, the amount available for reapplication shall consist of the excess, if any, of (i) over (ii) immediately following:

"(i) 96% of the Employer's Contributions for such canceled Future Service Annuity, plus interest on 96% of each such Contribution at the Contract Rate of Interest from the end of the Contract Year in which such Contribution was applied to purchase such canceled Future Service Annuity to the Contract Anniversary following cancelation [sic].

"(ii) 4% of the Participant's Contributions, if any, received by the Prudential together with similar interest on 4% of each such Contribution.

"(b) If Past Service Annuity purchased for a Participant is canceled, the amount available for reapplication shall be the greater of (i) and (ii) immediately following:

"(i) 96% of the Consideration for such canceled Past Service Annuity, plus interest on 96% of such Consideration at the Contract Rate of interest from the date of purchase of such canceled Past Service Annuity to the Contract Anniversary following cancelation [sic].

"(ii) 100% of such Consideration without interest."

vice contributions, had the right to use this credit which was generated from the future service benefits for further future service benefits, and that plaintiff has no right under Provision XX, Paragraph 2(a)(ii) of the contract to require the application of these funds to the past service provision of the policy.

Accordingly the judgment of the Circuit Court of Kanawha County is affirmed.

*Affirmed.*